UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SHAI BEN-LEVY,

                 Plaintiff,

      - against -

BLOOMBERG, L.P.,

                 Defendant.

-------------------------------------------------------------X

**COMPLAINT**

Jury Trial Demanded

Case No: 20  CV _____

COMES NOW Shai Ben-Levy ("Ben-Levy", "Plaintiff" or "plaintiff"), by his attorneys, The

Law Office of Neal Brickman, P.C., 317 Madison Avenue, 21st Floor, New York, New York 10017,

and as and for his Complaint against defendant, Bloomberg, L.P. ("Bloomberg"), states and alleges

as follows:

<u>Statement Pursuant to Local Civil Rule 1.9</u>

    1.    Plaintiff is an individual citizen of the United States of America and, as such, has no

interests or subsidiaries that need to be disclosed.

<u>Nature of the Action</u>

    2.    This action arises under Title VII of the Civil Rights Act of 1964, as amended; the

Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, as amended; and the

Americans' with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* as amended; based

on the discriminatory and retaliatory acts of Plaintiff, and its employees and agents, against Ben-

Levy.

    3.    This action seeks compensatory and punitive damages, as well as costs and attorneys'

fees, based on the discriminatory and retaliatory actions undertaken by Defendant in improperly

demoting and harassing Mr. Ben Levy based upon his age and disability and in retaliation for his

-1-

complaint about such discrimination.

Jurisdiction

4.      Jurisdiction over the federal claims is invoked pursuant to 28 U.S.C. § 1331, in that these claims arise under the laws of the United States; and, should this matter be consolidated with a state complaint setting forth, *inter alia*, various state and common law claims pursuant to the doctrine of pendent jurisdiction as codified in 28 U.S.C. § 1367.  This action is timely filed within ninety (90) days of the issuance of a valid Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), a copy of that February 10, 2011 Right to Sue Letter, is annexed hereto as Exhibit "A".

Venue

5.      This action is properly venued in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1), because the defendant resides in this judicial district, and (b)(2), because a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

Parties

6.      At all times relevant hereto, Ben-Levy was, and is, an individual citizen of the United States, having been born on June 27, 1965 with his primary residence in New York State and who -- since 2006 -- has suffered from a heart condition disability for which he took short term disability leave in 2007.

7.      At all times relevant hereto, Bloomberg, L.P.  ("Bloomberg", "Defendant" or "defendant") is, and was, a financial software, news and data company, incorporated under the laws of the State of Delaware.  Bloomberg has its principal place of business and headquarters at 731 Lexington Avenue, New York, New York 10022.

-2-

<u>Relevant Facts</u>

8.      Mr. Ben-Levy was first employed by Bloomberg as a programmer over 20 years ago.

9.      Over the succeeding years, Mr. Ben-Levy received regular promotions, pay increases and accolades for his work for, and dedication to -- as well as for the creation and registering of various inventions and a patent through -- the Company.

10.     By 2000, Mr. Ben-Levy had been promoted to be the Head of the Systems Department with supervisory responsibility for, among other issues, significantly over 100 people under the Research and Development ("R&D") Department at the Company.

11.     Mr. Ben-Levy retained that position for approximately seven years with continuing and ongoing praise and regular compensation increases.

12.     During the first part of 2007, Mr. Ben Levy was on approved and documented leave to address a heart condition which resulted in surgery and the installation of two coronary artery stents.

13.     Within days of his return from medical leave on or about October 29, 2007, Mr. Ben-Levy was summarily demoted from his position as the Head of the Systems Department to a lower management position with supervisory responsibility for approximately 20 people.

14.     Specifically, Mr. Ben-Levy was told by the then Head of Human Resources that Domenic Maida, the Acting Head of the R&D Department, wanted him out and that he -- notwithstanding his unblemished record of excellent performance and achievement -- needed to find a new position.

15.     During his tenure as Head of Systems, Mr. Ben-Levy received overwhelming positive feedback.  He received not a single negative review during that seven year period or, for that matter,

-3-

at any time prior during his tenure at the Company.

16.     The only things that changed between the time that he was praised and rewarded with increased compensation and responsibilities and the time that he was demoted were his disability status and the facts that he actually took medical leave and that he had further passed the age of forty (40).

17.     Mr. Ben-Levy was replaced by an individual who was both younger, less qualified and who also had not taken medical leave to treat a disability.

18.     At the time of his demotion, Mr. Ben-Levy made complaint to Human Resources about the adverse employment action, but no corrective action was undertaken and, upon information and belief, no investigation was ever commenced, much less completed.

19.     Thereafter, on or about December 15, 2007, Mr. Ben-Levy was demoted to a managerial position within Credit Derivatives with fewer responsibilities and less growth potential than he had in his prior position.

20.     In this new role, Mr. Ben-Levy was asked, among other tasks, to "manage people out" despite the fact that they had met the terms of their relevant Performance Improvement Plans ("PIPs").

21.     At Bloomberg, "managing a person out" is a practice whereby the Company puts a person it wants to get rid of in a job for which he/she is not qualified, has little or no experience, constitutes menial tasks in comparison to their prior position or in which he/she is being set up to fail.  This is a tried and true method utilized by Bloomberg to get rid of older workers, women, disabled workers, pregnant women and any employee who has the temerity to complain about discrimination.

22.    The individuals Plaintiff was instructed to manage out by Mr. Tang and Steve Ross were almost universally over the age of forty.

23.    After Mr. Ben-Levy refused to discriminate against older employees, in April 2009, he was again demoted by Mr. Tang to a team leader position for message compliance.

24.    Once again, Plaintiff received no negative review warranting this second demotion, and, aside from his having taken medical leave and surpassing the age of forty, the only change in circumstance over the past year was his refusal to participate in age discrimination.

25.    Plaintiff again was replaced in his position by a younger, less-qualified employee.

26.    In this new position, Plaintiff -- now supervising only four (4) employees -- had significantly reduced management responsibilities.

27.    The team was tasked with building software to monitor communications for the Company and its clients, as well as furthering and completing other specific initiatives important to safeguarding, among other items, such communications.

28.    Despite the important nature of the tasks assigned, Defendants refused to give Plaintiff either the manpower, the requisite authority or the time necessary to complete the proposed tasks.

29.    Ironically, after questioning the wisdom of managing other older employees out and, in fact, refusing to participate in such acts, Plaintiff now found himself being "managed out" of Bloomberg in the same discriminatory manner.

30.    In September, 2009, for the first time in his two decade career at the Company, Plaintiff received a review with a "not meeting expectations" issue.

31.    Despite Plaintiff's warnings over the summer of 2009 that he required additional

personnel and/or additional time in order properly to complete the tasks assigned to him, he was taken to task for not meeting deadlines known -- at the time they were given to him -- to be impossible to meet.

32.    When Plaintiff again complained, he, in October 2009, was promptly placed on a Performance Improvement Plan ("PIP") despite his having done excellent work by any objective standard on all assigned tasks.

33.    Management then further retaliated against Plaintiff for his complaints of discrimination by saddling Plaintiff and his team with another individual whose purpose was not to actively assist in the completion of the assigned tasks, but rather to "shadow" Plaintiff, following him to, and monitoring him at, all meetings Plaintiff attended.

34.    When Plaintiff's team asked him what was going on, he was forced to tell them that he did not know and that he was as in the dark as they were as to any productive -- or legitimate business -- purpose for the installation of an employee assigned only to "shadow" everything that Plaintiff did.

35.    Plaintiff tried to mitigate the damage being perpetrated by Defendants -- not only in terms of his compensation and being subjected to ongoing and pervasive harassment, but also in the long-term deleterious effects on his career from the series of unwarranted demotions -- by applying for alternative jobs within the Company, but none came to fruition.

36.    Over the next year, Plaintiff was subjected to additional unwarranted and discriminatory PIPs; materially deficient, false and inaccurate negative reviews; an ongoing hostile work environment; incessant and retaliatory micro-managing; additional compensation reduction; and the continued ruination of a twenty-year career and the consequent loss on future earning

potential and reputation in his chosen field.

37.     These abuses did not dissipate, but rather were exacerbated, after Plaintiff filed a written complaint of discrimination with the Company on or about February 22, 2010.

38.     On or about February 24, 2010, Defendants removed Mr. Ben-Levy from his project management responsibilities and again replaced him with a younger less-qualified individual.

39.     On or about February 25, 2010, Mr. Ben-Levy was again hospitalized for his heart condition disability and was forced to take short-term medical leave due to the hostile work environment, retaliation and ongoing discrimination and the consequent stress of the same. Defendants were specifically aware of the dangers to which they were subjecting Mr. Ben-Levy yet they only continued to exacerbate their attacks.

40.     On or about September 13, 2010, Defendants again demoted Mr. Ben-Levy -- again without legitimate basis -- by stripping him of his remaining managerial and team leader responsibilities.

41.     Mr. Ben-Levy currently maintains a junior software developer role with no managerial responsibilities whatsoever.

42.     On or about October 27, 2010, Ben-Levy filed a claim for discrimination with the Equal Employment Opportunity Commission.

43.     On or about October 27, 2010, Ben-Levy filed a complaint in the Supreme Court of the State of New York against Bloomberg and certain individual "employers" alleging, among other causes of action, discrimination in contravention of the FMLA; discrimination in contravention of the regulations and laws of the City and State of New York; and various common law causes of action.

44.     Subsequent to his filing the State Court action and his Charge with the EEOC, plaintiff has been subjected to continuing abuse, disparate treatment, discrimination and retaliation.

45.     Among other events, plaintiff has been subjected to unfair, misleading reviews; reduction in compensation; an abusive environment; and the further diminution of authority while being expected to deliver untenable results.   By way of example only, Defendants have systematically demoted plaintiff and reduced his total compensation by over Forty percent (40%).

46.     Upon information and belief, the slow bleed perpetrated against Plaintiff as a result of his age and his disability along with the conjunctive medical leave which was escalated after he complained of such discriminatory treatment has been effected against other similarly situated employees by Bloomberg.

47.     Apparently Defendants' theory is that if they demote in a progression along with simultaneous loss of compensation and the inevitable -- but routinely denied -- loss of career opportunities and material diminution of career earning potential, they cannot be held liable.

48.     The reality is that if an employer discriminates against an employee it does not matter whether they drag them down the stairs so that they hit their head on each step on the way to the curb or simply throw them out the window.   The result is the same.   Both are actionable.

49.     As a direct result of the discriminatory acts of Defendants, Plaintiff has been materially injured and harmed.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
(Age and Disability Discrimination in contravention of the ADEA and the ADA)

50.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs "1" through "49" of this Complaint with the same force and effect as if fully set forth herein at length.

-8-

51.     The ADEA prohibits workplace discrimination, adverse employment decisions and disparate treatment on the basis of age.

52.     The ADA prohibits workplace discrimination, adverse employment decisions and disparate treatment on the basis of disability.

53.     Plaintiff, an individual over forty (40) years of age, suffered -- and suffers -- a disability within the meaning of the ADA in that his condition and subsequent treatment impaired a normal bodily function.

54.     Based on Mr. Ben-Levy's age and disability, Defendants repeatedly demoted him; routinely replaced him with younger, less-qualified employees; repeatedly contrived negative reviews of his performance; systematically cut his earning capacity on a short-term and long-term basis; damaged his reputation within the workplace and the industry; subjected him to an increasingly hostile work environment; effectively destroyed his career along with other improper acts of discrimination: all in direct contravention of local and state law, as well as the Corporate Defendants' own written policies.

55.     As a direct result of this illegal and improper discrimination, in the form of disparate treatment, hostile work environment and overall improper, as well as pervasive, ageism and discrimination based on his disability within Defendants' organization, Plaintiff has suffered injury and harm in an amount to be determined at trial, and requests a judgment in no event less than Three Million Dollars ($3,000,000.00) in compensatory damages; Ten Million Dollars ($10,000,000.00) in punitive damages; the costs and disbursements of this action, including reasonable attorneys' fees; all relevant interest; and any such other relief to Plaintiff as this Court deems just and proper.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>
(Retaliation in contravention of the ADEA and the ADA)

56.    Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "55" with the same force and effect as if fully set forth herein at length.

57.    Both the ADEA and the ADA prohibit workplace discrimination, adverse employment decisions and disparate treatment in retaliation for the submission of a complaint alleging discrimination on the basis of age and/or disability, or other protected classification. These statutes also prohibit -- and protect against and provide remedies to redress -- acts of retaliation, including adverse employment decisions similar to those suffered by Plaintiff, against individuals who refuse to partake in discriminatory acts of employer or complain about discrimination as against other employees.

58.    Directly after making complaint of discrimination and in retaliation therefor, Defendants effected their threats by actually demoting Plaintiff; replacing him with less-qualified employees who had not complained about discrimination; reducing his compensation; harassing him; subjecting him to an increasingly hostile work environment; providing him with contrived negative reviews of his performance; saddling him with unwarranted, and untenable, PIP plans; effectively destroying his career; along with other improper acts of discrimination and retaliation: all in direct contravention of local and state law, as well as the Corporate Defendants own written policies.

59.    There was no legitimate basis for these adverse employment actions.

60.    As a direct result of this improper retaliation, Plaintiff has suffered injury and harm in an amount to be determined at trial, and requests a judgment in no event less than Three Million Dollars ($3,000,000.00) in compensatory damages; Ten Million Dollars ($10,000,000.00) in punitive damages; the costs and disbursements of this action, including reasonable attorneys' fees; all relevant

interest; and any such other relief to Plaintiff as this Court deems just and proper.

business purpose whatsoever.

## **Jury Demand**

61.     Plaintiff hereby demands a trial by jury.

Dated: New York, New York
          March 7, 2011

Law Offices of Neal Brickman, P.C.
Neal Brickman (NB0874)
Ethan Leonard (EL2497)
Attorneys for Plaintiff
317 Madison Avenue - 21st Floor
New York, New York 10021
(212) 986-6840

-11-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CIVIL ACTION NO. 2011 CV

SHAI BEN-LEVY,

Plaintiff,

- against -

BLOOMBERG, L.P.,

Defendants.

COMPLAINT

THE LAW OFFICES OF NEAL BRICKMAN
*Attorneys for Plaintiff*

*Office and Post Office Address*
317 MADISON AVENUE
21ST FLOOR
NEW YORK, NEW YORK 10017

To:

Dated:

Service of a copy of the within
is hereby admitted.

Dated,

Attorney(s) for

---

—— NOTICE OF ENTRY ——

Madam or Sir–Please take notice that the within is a
true copy of a duly entered
in the office of the clerk of the within named court on
, 20

Dated,

Yours, etc.

THE LAW OFFICES OF NEAL BRICKMAN
*Attorneys for*

*Office and Post Office Address*
317 MADISON AVENUE
21ST FLOOR
NEW YORK, NEW YORK 10017

To:

Attorney(s) for

—— NOTICE OF SETTLEMENT ——

Sir–Please take notice that an order
of which the within is a true copy will be presented for
settlement to the Hon.
one of the judges of the within named Court, at
at
on
, 20

Dated,

Yours, etc.

THE LAW OFFICES OF NEAL BRICKMAN
*Attorneys for*

*Office and Post Office Address*
317 MADISON AVENUE
21ST FLOOR
NEW YORK, NEW YORK 10017

To:

Attorney(s) for